J-A18042-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.O., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.A.K., MOTHER | : | |
| | : | |
| | : | No. 346 EDA 2018 |

Appeal from the Decree and Order Entered December 19, 2017
in the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0001023-2017
CP-51-DP-0002549-2016

BEFORE:   STABILE, J., STEVENS, P.J.E.,* and STRASSBURGER, J.**

MEMORANDUM BY STRASSBURGER, J.:          **FILED SEPTEMBER 11, 2018**

D.A.K. (Mother) appeals from the decree entered December 19, 2017, in the Court of Common Pleas of Philadelphia County, which terminated involuntarily her parental rights to her minor son, A.O. (Child), born in March 2012.[1]  Mother's notice of appeal also challenges the order purportedly changing Child's permanency goal to adoption.  We affirm.

In November 2016, Philadelphia Department of Human Services, Child and Youth Division (DHS) filed a dependency petition alleging the following facts: (1) it had become involved with the family in September 2016, after

_____

* Former Justice specially assigned to the Superior Court.

** Retired Senior Judge assigned to the Superior Court.

[1] The parental rights of Child's putative father were terminated on March 13, 2018.  Child's putative father did not file an appeal or participate in Mother's appeal.

receiving a report that Mother was non-compliant with her methadone program, Mother had tested positive for cocaine, Mother was inconsistent with taking her mental health medication, and it was unknown who cared for then four-year-old Child while Mother used drugs; (2) while DHS was trying to ascertain the whereabouts of Mother and Child, DHS received a second report in October 2016 that Mother and Child were living in a boarding house and Mother used cocaine in front of Child; (3) DHS located Mother and Child in a different location, and Mother would not cooperate with providing the name of her methadone clinic, admitted she smoked cocaine, and stated she was on the way to drop Child off at Child's adult sister's house because the sister cares for Child while Mother is in treatment and uses drugs; (4) DHS ascertained that Mother has a lengthy history of substance abuse and lacked stable housing; and (5) Mother placed Child in the care of his adult sister in accordance with a safety plan developed by DHS.[2]  Dependency Petition, 11/17/2016, at 3.

On November 29, 2016, the family court adjudicated Child dependent "based upon the allegations in the petition."  Order of Adjudication and

_____

[2] The family court opinion states that Child was placed with his sister pursuant to a safety plan on September 12, 2016.  Family Court Opinion, 3/8/2018, at 1.  DHS averred the same in its dependency petition. Dependency Petition, 11/17/2016, at 3 (numbering supplied).  It is likely that DHS made a typographical error and meant October 12, 2016, because DHS also avers in the dependency petition that it first received a report regarding Mother on September 20, 2016, but the agency was unable to make contact with Mother on that date.  ***Id.***

Disposition, 11/29/2016, at 1. The family court ordered DHS to place Child into foster care and permitted Mother to have weekly supervised visits. *Id.* at 1-2. It also ordered Mother to undergo drug screening unless she entered treatment at Kirkbride,[3] and referred Mother for a behavioral health assessment and monitoring, parenting instruction, and housing assistance. *Id.* at 2.

At the first permanency review hearing on February 28, 2017, the family court found Mother to be in substantial compliance with the permanency plan, as she was enrolled in outpatient drug treatment at the Goldman Clinic at Girard Medical Center. Permanency Review Order, 2/28/2017, at 1-2; DHS Exhibit 6, at 1. However, Mother tested positive for cocaine that same day. DHS Exhibit 6, at 1. She also tested positive for cocaine on March 31, 2017, and May 30, 2017. DHS Exhibit 6, at 1-2.

At the second permanency review hearing on August 3, 2017, the family court found Mother to be in minimal compliance with the permanency plan. Permanency Review Order, 8/3/2017, at 2. Mother had been discharged from parenting and housing services due to non-compliance. *Id.* At that time, her housing was not appropriate. *Id.* Mother was compliant with visitation, but it remained supervised. *Id.*

---

[3] Kirkbride appears to be a drug and alcohol treatment facility that provides inpatient treatment; as discussed *infra*, Mother did not begin inpatient treatment at Kirkbride until October 13, 2017, almost 11 months after this order.

Despite being ordered to report to the Clinical Evaluation Unit (CEU) forthwith for a drug screen, *id.*, Mother did not report to CEU until September 27, 2017. DHS Exhibit 6, at 3. At that time, Mother reported continued treatment with the Goldman Clinic. *Id.* However, the Goldman Clinic did not provide an updated progress report despite CEU's attempts to obtain one. *Id.* Nevertheless, even if Mother were attending treatment, she was continuing to use drugs, as evidenced by her testing positive for barbiturates and cocaine in late September 2017.[4] *Id.* at 3-4.

Several weeks after her positive screen, on October 13, 2017, Mother began inpatient drug treatment at Kirkbride. She completed that treatment approximately one month later. She then enrolled in treatment at Girard Medical Center. *Id.* at 13, 19-20.

Throughout the time Child was in foster care, DHS was never able to verify that Mother had appropriate or stable housing. By the time of the termination/goal change hearing in December 2017, Mother claimed to have moved in with a friend. She only informed DHS on the day of the hearing, leaving DHS unable to verify its appropriateness before the scheduled hearing. N.T., 12/17/2018, at 12-13.

_____

[4] DHS Exhibit 6, which consists of CEU's progress reports, lists positive screens for barbiturates and cocaine on September 27 and 30, 2017. *Id.* at 3-4. The DHS caseworker testified that Mother had only one positive screen in September, but did not provide an exact date. N.T., 12/19/2017, at 11.

While Mother struggled with her sobriety and obtaining stable housing, Child remained in foster care. He initially was placed with his adult sister, but the family court ordered DHS to move him to a non-kinship foster home in August 2017 if those residing in the kinship home continued to fail to comply with requirements for certification. Permanency Review Order, 8/3/2017, at 2. Child moved to his current pre-adoptive foster home on August 17, 2017. N.T., 12/17/2018, at 14. Based upon her observations, the DHS caseworker believes that Child and his foster mother have a "loving bond." *Id.* Child appears to be happy and foster mother is "teaching him." *Id.* The DHS caseworker has observed an improvement with Child since being placed in his foster mother's care. *Id.* Previously, Child would shut down and would not really talk to the caseworker. *Id.* Now, he is more open in school, always willing to talk to the caseworker, and is excited to show the caseworker things. Child started kindergarten in 2017, and it is his foster mother, not Mother, who ensures that all of his educational needs are being met. *Id.* at 15-16.

Mother visited Child regularly, except when she was in inpatient treatment, but she never progressed to unsupervised or more frequent visits due to her continued use of drugs. *Id.* at 13, 18. Child separated easily from Mother at the end of visits, and Child did not ask about Mother or appear distressed during the month that Mother was unable to visit. *Id.* at 14-15. The DHS caseworker assessed Mother and Child as having a "very

good bond," but opined that adoption is in his best interest and termination of Mother's rights would not cause him "irreparable harm." *Id.* at 14, 16. The caseworker based her opinion upon Child's not showing signs of problems despite his separation from Mother, his progress in the foster home, his bond and relationship with his foster mother, and his need for stability.[5] *Id.* at 16. Child refers to Mother as "mother," but he looks to his foster mother to meet his needs. *Id.* at 17, 23. Child asked to go home to Mother when he was first removed, but he has not expressed this wish to the caseworker since that time. *Id.* at 21-23.

DHS filed a petition to terminate involuntarily Mother's rights on October 18, 2017. It also filed a petition to change Child's permanency goal to adoption in his dependency matter. The family court conducted a combined goal change and termination hearing on December 17, 2017, where DHS introduced the evidence summarized *supra*. The family court entered a decree on the adoption docket on December 19, 2017, which terminated Mother's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1),

---

[5] The caseworker's exact response to the question of what made her believe that Child would not suffer irreparable harm if the family court were to terminate Mother's rights was "[b]ecause he – his relationship and bond is good with – where he is. He is striving. There's – he hasn't shown signs of, really, detachment from her." *Id.* at 16. She also testified that adoption is in his best interest because he needs stability. *Id.* at 17. Based upon the context of the caseworker's testimony, it appears that the caseworker's word choice may not have accurately reflected the message she was attempting to convey.

(2), (5), (8), and (b). Decree of Involuntary Termination of Parental Rights, 12/29/2017, at 1. The family court also entered a permanency review order on Child's dependency docket, which kept Child's permanency goal as reunification with a concurrent goal of adoption. Permanency Review Order, 12/19/2017, at 1. Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal.

Mother now raises the following issues for our review:

(1)    Did the family court err in changing the goal to adoption and terminating [Mother's] parental rights under [23 Pa.C.S. § 2511 (a)(1), (2), (5), and (8)] as [DHS] failed to establish by clear and convincing evidence that [Mother] cannot or will not be able to remedy the incapacity and conditions which led to [Child's] removal?

(2)    Did the family court err in changing the goal to adoption and terminating [Mother's] parental rights under [23 Pa.C.S. § 2511(b)] because it failed to give primary consideration to the developmental, physical[,] and emotional needs and welfare of [Child] insofar as [Child] is bonded to [Mother]?

Mother's Brief at 3.

We address Mother's arguments regarding the December 19, 2017 permanency review order first. Mother filed one notice of appeal purporting to challenge both the December 19, 2017 termination decree and the December 19, 2017 permanency review order, and included the docket numbers for Child's dependency and adoption matters. We point out that the correct procedure in this circumstance is to file separate notices of appeal for each docket. *See* Pa.R.A.P. 341, Note ("Where … one or more

orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed."). In a recent case, our Supreme Court held that the failure to file separate notices of appeal from an order resolving issues on more than one docket "requires the appellate court to quash the appeal." **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018). However, the Court clarified that it would apply its holding only "in future cases," because of decades of prior case law that seldom quashed appeals for that reason, and because the citation to case law contained in the note to Rule 341 was unclear. **Id.** Thus, because Mother filed her notice of appeal prior to the filing of our Supreme Court's decision in **Walker**, we do not quash her appeal.

However, Mother has waived all arguments with respect to the December 19, 2017 permanency review order. Mother's brief on appeal contains no substantive discussion of any issue pertaining to a change in Child's permanency goal in the dependency matter.[6] Accordingly, Mother has failed to preserve any challenge to the permanency review order for our review, and we address only the decree terminating Mother's parental rights.

_____

[6] Although Mother claims that the family court changed Child's permanency goal to adoption, the order indicates otherwise. **See** Permanency Review Order, 12/17/2017, at 1. It is unclear whether this was an oversight by the family court or intentional (due to the continuance of the hearing as to Child's recently identified putative father). We note that the family court may terminate parental rights even if the permanency goal remains reunification. **In re Adoption of S.E.G.**, 901 A.2d 1017, 1029 (Pa. 2006).

*See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) ("Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

Before we turn to Mother's challenge to the termination decree, we address whether Child's statutory right to legal counsel was satisfied. Pursuant to 23 Pa.C.S. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for child's legal interests, which our Supreme Court has defined as a child's preferred outcome. *In re T.S.*, __ A.3d __, 2018 WL 4001825 at * 1 (Pa. 2018) (citing *In re Adoption of L.B.M.*, 161 A.3d 172, 174 (Pa. 2017)). Because the right to counsel belongs to the child who is unable to address a deprivation of his or her right to counsel on his or her own behalf, we must address this issue *sua sponte*. *See id.* at *5 (holding that the child's statutory right to counsel is non-waivable); *In re K.J.H.*, 180 A.3d 411 (Pa. Super. 2018) (holding that this Court must determine *sua sponte* whether 23 Pa.C.S. § 2313(a) was satisfied).

In this case, two attorneys represented Child, who was five years old at the time of the hearing: Patrice Langenbach, Esquire as guardian *ad litem*, and Craig Sokolow, Esquire, as legal counsel. At the hearing, Attorney Langenbach argued that it was in Child's best interest to terminate parental rights; Attorney Sokolow, on the other hand, advocated that the

family court not terminate Mother's parental rights due to the bond between Child and Mother. N.T., 12/19/2017, at 28. Appointment of Attorney Sokolow to advocate for Child's legal interests in the termination matter satisfied subsection 2313(a).

Nevertheless, we note with displeasure that Attorney Sokolow did not file a brief in this Court or otherwise advocate for Child's interests on appeal. Counsel's duty to represent a Child does not stop at the conclusion of the termination of parental rights hearing. *In re Adoption of T.M.L.M.*, 184 A.3d 585, 590 (Pa. Super. 2018); *see also In re M.T.*, 607 A.2d 271, 276 (Pa. Super. 1992) (observing that child's counsel abdicated his legal responsibilities to his client because counsel, *inter alia*, failed to file a brief, indicate that he joined another party's brief, or otherwise notify this Court of his client's position). We caution Child's legal counsel that it is his job to "represent [his client] with zeal and professionalism. [Child has] no say in [appointment of counsel] and deserve[s] to have the benefit of effective representation, particularly when a matter as important as [his] future relationship with a biological parent is at stake." *T.M.L.M.*, 184 A.3d at 590.

We also observe that following the March 2018 permanency review hearing, which was three months after Mother's rights were terminated, an order appears in Child's dependency docket revealing that the family court vacated Attorney Sokolow's appointment in 31 days and permitted the guardian *ad litem* to continue in a dual role. Permanency Review Order,

3/31/2018, at 2. Presumably, the family court did this because it determined that there was no longer a conflict between Child's best and legal interests, but no explanation appears in the record. However, even if the family court vacated Attorney Sokolow's appointment as to the dependency matter, nothing appears in the docket of the termination matter that permitted Attorney Sokolow to be relieved of his duties to Child. Further, Attorney Sokolow received notice of all appellate filings in this Court, but never notified this Court of a belief that he no longer represents Child. Nor does the guardian *ad litem* explain the procedural posture in this regard or indicate that she represents Child in a dual capacity because his best and legal interests now coincide.

However, we are confined to the evidence in the record when reviewing the family court's decision. We have reviewed the record thoroughly. Because Child received counsel who advocated for his legal interests at the time of the hearing, we need not remand for clarification of Child's post-hearing position or a separate brief by Attorney Sokolow in this case.

We turn now to Mother's challenges to the termination decree, which we review mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an

- 11 -

abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subs]ection 2511(b): determination of the needs and welfare of the child[.]

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the family court terminated Mother's parental rights pursuant to subsections 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of 2511(a), as well as subsection 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's decision to terminate under subsections 2511(a)(8) and (b), which provide as follows.

**(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

- 12 -

* * *

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1) … or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

We have summarized the requirements of subsection 2511(a)(8) as

follows.

> In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa. Super. 2003).

Mother argues that the family court erred by terminating parental rights because she consistently visited Child and complied with drug treatment. Mother's Brief at 11. She argues that she "is able to remedy her parental incapacity and the conditions that led to [Child's] removal" because she "successfully completed inpatient treatment, [which was] her first attempt at inpatient treatment, and was consistently attending outpatient follow-up treatment." *Id.*[7]

The flaw in Mother's argument is that subsection 2511(a)(8) "does *not* require an evaluation of [a parent's] willingness or ability to remedy the conditions that led to placement of [his or her] children." *In re Adoption of R.J.S.*, 901 A.2d 502, 511 (Pa. Super. 2006) (citations omitted) (emphasis in original). Subsection 2511(a)(8) represents the determination that "a parent's basic constitutional right to the custody and rearing of his [or her] … child is converted, upon the failure to fulfill … parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In the Interest of K.Z.S.*, 946 A.2d 753, 759-60 (Pa. Super. 2008) (quoting *In re B.N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004)).

The record reveals that Child was removed and adjudicated dependent due to Mother's struggles with drug addiction and lack of stable housing.

---

[7] Mother poses no challenge to the first part of the analysis regarding the time Child has been out of her care.

Throughout the time Child was in foster care, Mother continued to struggle with the same concerns. Although she attempted treatment multiple times, she continued to test positive for cocaine, and did not achieve a sustained period of sobriety outside the structures of the inpatient program. Despite a referral for assistance in obtaining housing, Mother was never able to demonstrate to DHS that she had safe, stable, and appropriate housing. Further, she failed to complete a parenting course despite being court ordered to do so. Thus, the conditions, which led to the removal and placement of Child, continued to exist.

Mother also challenges the family court's refusal to accept testimony regarding her alleged two negative drug screen results that occurred after she received notice of the filing of the involuntary termination petition.[8]

---

[8] The family court did not address Mother's claim that it erred by failing to admit post-petition evidence in its Rule 1925(a) opinion. Arguably, Mother has waived this issue by not including it in her concise statement of matters complained of on appeal. Mother phrased her concise statement in a similar manner to the issues she presents on appeal. Statement of Matters Complained on Appeal, 1/18/2018, at 1; Mother's Brief at 3. Although we will deem each error identified in the statement to include "every subsidiary issue contained therein which was raised in the trial court[,]" the concise statement must "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii), (v). Issues that are not included in or suggested by an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived. *In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017). Although related, Mother's evidentiary challenge arguably is a separate issue from her challenge to the sufficiency of the evidence under subsection 2511(a), and thus her concise statement did not identify her challenge with sufficient detail for the family

*(Footnote Continued Next Page)*

Mother's Brief at 11. Mother twice attempted to establish through cross-examination of the DHS caseworker that Mother had tested negative for drugs after she completed inpatient treatment. N.T., 12/19/2017, at 20-21; 24. DHS objected, arguing that any testimony relating to Mother's efforts after the petition was filed was inadmissible, and the family court sustained the objections. *Id.*

"[T]he decision of whether to admit or exclude evidence is within the sound discretion of the [family] court. A reviewing court will not disturb these rulings absent an abuse of discretion. Discretion is abused if, *inter alia*, the [family] court overrides or misapplies the law." *In re A.J.R.-H.*, ___ A.3d ___, 2018 WL 3455417 at *7 (Pa. 2018). Relevant to Mother's case, the statutory prohibition against admission of evidence regarding efforts first initiated after a parent received notice of the petition only applies to petitions filed under subsections 2511(a)(1) and (8). 23 Pa.C.S. § 2511(b) ("With respect to any petition filed pursuant to subsection (a)(1) … or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition."). Thus, because DHS was also seeking to terminate Mother's rights under subsections (a)(2) and (a)(5), the family court misapplied the law in sustaining DHS's objection. This line of cross-
_(Footnote Continued)_ ────────

court to have addressed her issue. Nevertheless, we will address Mother's challenge on the merits.

- 16 -

examination was relevant to and admissible regarding subsections (a)(2) and (a)(5), even if the Adoption Act prohibited the family court from considering the testimony as part of its analysis of subsections (a)(1) and (a)(8).

Mother argues that the family court should have admitted the testimony and considered it as part of its (a)(8) analysis because Mother's efforts towards sobriety began prior to the notice of the petition, and the testimony regarding her achievement and maintenance of sobriety post-petition is confirmation that her efforts worked. Mother's Brief at 11. Mother entered inpatient treatment four days prior to the filing of the petition.[9] We agree with Mother that under these circumstances, the trial court misapplied the law by failing to consider any evidence that Mother's inpatient treatment helped her achieve sobriety because she initiated such efforts before the petition was filed, albeit with only days to spare.

Nevertheless, we conclude that the family court's failure to consider indications of Mother's more recent sobriety is harmless under the facts of this case. In a termination case, an error is harmless if "the evidentiary error could not have had any impact upon the [family] court's decision." ***A.J.R.-H.***, 2018 WL 3455417, at *14. It is clear that here it could not have

---

[9] The record does not reveal the exact date on which Mother received notice of DHS's filing of the petition, but our analysis in the instant case does not change even assuming *arguendo* that she received notice on the same day that DHS filed the petition.

had an impact. Child has been in foster care for over a year. Even if Mother managed to be clean on two occasions as she alleges, this does not demonstrate a stable period of sustained sobriety. Mother had completed inpatient treatment in mid-November 2017, and was living in the community for only approximately one month prior to the termination hearing. She still required outpatient treatment, and unfortunately, Mother has failed multiple times to maintain sobriety even while she was in treatment. In fact, over the year Child was in foster care, Mother never had a sustained period of sobriety that was stable enough to progress to unsupervised or extended visitation.

Once a parent has been given a sufficient opportunity to rectify the conditions that brought his or her child into care, the family court may not give a parent "further opportunity to [attempt to] cultivate an environment where [the parent] can care for [a child]" because doing so would subject the child who has been waiting for permanency "to a state of proverbial limbo in anticipation of a scenario that is speculative at best." *In re C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). Remaining drug-free in the confines of a structured program does not prove that a parent can "maintain that status among the external pressures of the outside world[.]" *See id.* This is particularly the case when a parent has not been sober long enough to progress to unsupervised visits and demonstrate that the parent can handle the pressures of parenting during recovery. *See id.*

As this Court has expressed previously,

> [w]e recognize that the application of [subs]ection (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. … However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the [sobriety and stability] necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit [18] months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care.

*In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

Moreover, even if Mother achieved sobriety, she has not fully addressed her housing and parenting issues. It was unclear whether Mother's housing was safe and stable, as she only told the caseworker on the day of the hearing that she had moved in with a friend. Further, Mother was noncompliant with housing and parenting services that could have assisted her in making more progress. Thus, it is apparent that the conditions that led to Child's removal continued to exist, and the trial court did not abuse its discretion in terminating Mother's parental rights pursuant to subsection 2511(a)(8).[10]

_____

[10] As our analysis of the last prong of subsection 2511(a)(8) is similar to our analysis under subsection 2511(b), we will address the last prong *infra*.

- 19 -

We turn now to Mother's argument regarding Child's needs and welfare. Mother argues that, due to the bond that she and Child share, the family court erred by determining that termination serves Child's needs and welfare. Mother's Brief at 13. She further argues that the family court should have preserved their relationship due to her recent progress. *Id.*

We have explained the analysis under subsection 2511(b) as follows.

[Subs]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, [subs]ection 2511(b) does not explicitly require a bonding analysis and the term "bond" is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quotation marks and citations omitted).

Parental rights may be terminated notwithstanding the existence of a parent-child bond. When examining the effect upon a child of severing a bond, courts must examine whether termination of parental rights will

destroy a "necessary and beneficial relationship," thereby causing a child to suffer "extreme emotional consequences." ***In re E.M.***, 620 A.2d 481, 484-85 (Pa. 1992).

Here, as we explained *supra*, if Mother had indeed made recent progress, this is a step in the right direction, but it came too late and is far from secure. The family court acknowledged the bond between Mother and Child, but credited the opinion of the DHS caseworker that Child would not suffer irreparable or detrimental harm if his bond with Mother was severed. Family Court Opinion, 3/8/2018, at 5. The caseworker explained that Child no longer asks about Mother and did not experience detrimental effects when Mother was unable to visit in October. N.T., 12/19/2017, at 14-17, 21-23. Furthermore, Child is making progress in his foster home, is bonded to his foster mother[11] and looks to her to meet his daily needs, and is in need of stability. ***Id.*** Thus, nothing in the record indicates that terminating parental rights will destroy an existing relationship that is "necessary and beneficial" to Child, or cause him significant emotional distress. ***C.f. In re Adoption of G.L.L.***, 124 A.3d 344, 347 (Pa. Super. 2015) (affirming court's refusal to terminate parental rights when the evidence indicated that parent

---

[11] The family court states in its opinion that Child's foster mother is his sister. This finding is not supported by the record, as Child was moved from his sister's kinship home to a non-kinship foster home. N.T., 12/17/2018, at 14. Nevertheless, Mother does not raise this as a claim of error, and the trial court's finding is not integral to its analysis and does not affect the outcome.

and child had a necessary and beneficial bond, which, if severed, would cause permanent damage to the child). Based on the evidence in the record, the family court did not err by prioritizing Child's developmental, physical, and security needs over his relationship with Mother. *See In re M.M.*, 106 A.3d 114, 119 (Pa. Super. 2014) (determining that the detriment to the children in severing their bond with mother was outweighed by their safety and security needs).

While this is a close case, we must defer to the family court because the record supports its factual findings, and its ultimate legal conclusion in terminating rights pursuant to subsections 2511(a)(8) and (b) is not the result of error or an abuse of discretion. *See In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012). Therefore, we affirm the December 19, 2017 permanency review order and the family court's decree terminating Mother's parental rights involuntarily.

Order and decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/18